IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| LOUISE DAVENPORT, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 16 C 0093 |
| v. | ) | |
| | ) | Magistrate Judge |
| NANCY A. BERRYHILL, Acting | ) | Susan E. Cox |
| Commissioner of Social Security,[1] | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Louise Davenport ("Plaintiff") appeals the decision of the Commissioner of Social Security ("Defendant," or the "Commissioner") to deny her application for disability benefits. Plaintiff has filed a Motion for Summary Judgment. [Dkt. 34.] For the following reasons, Plaintiff's motion is denied [dkt. 34] and the Administrative Law Judge's decision is affirmed.

## STATEMENT

### I.    Background

#### A.    Procedural History

Plaintiff, who filed other unsuccessful applications for disability benefits in the past, applied for Disability Insurance Benefits ("DIB") under Title II and Supplemental Security Income ("SSI") under Title XVI of the Social Security Act on May 2, 2012. (R. 225, 232, 247.) After her claim was denied initially and upon

---

[1]    Nancy A. Berryhill is substituted for her predecessor, Carolyn Colvin, pursuant to Federal Rule of Civil Procedure 25(d).

reconsideration, Plaintiff requested and received a hearing before an Administrative Law Judge ("ALJ"), at which she appeared without counsel. (R. 76.) The ALJ advised Plaintiff of her right to counsel and continued the hearing. (R. 108–110.) At her continued hearing date of March 13, 2014, Plaintiff again appeared, waived her right to counsel, and testified before the ALJ. A vocational expert ("VE") also testified. (R. 40–75.)

On May 29, 2014, the ALJ issued a denial of Plaintiff's claim, finding that Plaintiff was able to perform her past work as a secretary or, in the alternative, other work, and that she was not disabled as defined by the Social Security Act. (R. 34.) The Appeals Council then denied Plaintiff's request for review, leaving the ALJ's decision as the final decision of the Commissioner and reviewable by this Court under 42 U.S.C. § 405(g). *See Haynes v. Barnhart,* 416 F.3d 621,626 (7th Cir. 2005).

### A.    Plaintiff's Medical History

Plaintiff, who is homeless, has a bachelor's degree and last worked in 1999 as a secretary at a bank. (R. 47, 49, 252.) Medical records from 2001 and earlier indicate that Plaintiff at various times reported back pain, chest congestion, shortness of breath, leg pain, fatigue, headaches, and dizziness. (R. 519–523, 530–31.) She tested positive for mild cardiomegaly (enlarged heart) and hypertension, which was treated with hydrochlorothiazide. (R. 521–523.) In August 2002, she visited the emergency room because of problems with her eye. (R. 537.) She continued to experience hypertension, though she was not taking any medications

at that time. (*Id.*) At a February 2003 medical appointment, Plaintiff complained of excessive urination, excessive thirst, some dizziness and nausea, shortness of breath on exertion, and leg swelling. (R. 517.) She mentioned that she had been diagnosed with congestive heart failure. (*Id.*) She was prescribed two medications for high blood pressure. (*Id.*)

The file also contains some medical evidence from 2004 through 2010. Although these dates fall outside the period under consideration for the purposes of Plaintiff's claims of disability before 2003 and after 2012,[2] a summary of the medical evidence is included here in order to draw a full picture of Plaintiff's conditions. In January 2004, she presented to the emergency room with chest pain and reported that she had congestive heart failure. (R. 349.) However, the emergency room physician doubted her report because she acknowledged that she had not undergone an echocardiogram or other testing to establish that diagnosis. Plaintiff stated that she had been diagnosed solely based on swelling in her legs and refused to undergo cardiac testing. (*Id.*) A chest X-ray revealed she had bronchitis. (R. 359.) In April 2004, she was admitted to the hospital with chest pains and edema in her feet and legs. (R. 368–377.) A chest X-ray suggested early interstitial pneumonia. (R. 382.) In June 2004, a stress test electrocardiogram revealed a subnormal exercise tolerance but no symptoms suggestive of ischemia (reduced blood flow to the heart). (R. 365.)

Plaintiff returned to the hospital in August 2005 with chest pain and left eye pain. (R. 389.) A chest X-ray indicated some pulmonary scarring but no evidence of

---

[2] *See infra* § I.E.

congestive heart failure. (R. 395.) Follow-up eye care notes from 2005 through 2012 are difficult to read, but do confirm the presences of uveitic glaucoma in the left eye and blepharitis (recurring inflammation of the eyelid) in the right. (R. 478, 480–483, 485, 491.) The glaucoma since has caused blindness in her left eye. (R. 445, 485, referencing "NLP," or "no light perception," in the left eye.) She retains vision in her right eye but continues to experience irritation from blepharitis, which is treated with eye drops. (R. 445, 483, 485.)

In September 2007, Plaintiff again sought treatment for chest pain and shortness of breath. (R. 400–01.) Treatments notes indicate she was given education regarding non-cardiac chest pain and a prescription for blood pressure medication. (*Id.*) In December 2007, she went to the emergency room reporting abdominal pain and discomfort when urinating, and was released with prescriptions for blood pressure medications and pantoprazole, a medication used to reduce stomach acid. (R. 403.) April 2008 treatment notes indicate that she had swelling in both legs and was given prescriptions for two blood pressure medications. (R. 408–09.)

In addition to care for her eye ailments, high blood pressure, and chest pain, Plaintiff received foot care throughout 2009. (R. 436–37, 439, 443–44.) Her podiatric records and a record of a diabetes education session describe her as a diabetes patient, though there is no record of her actual diagnosis in her file. (R. 438, 442.) A June 2009 record from a diabetes program indicates that the doctor was unsure whether Plaintiff had diabetes, that her A1C was normal, and that the program

would recheck her fasting blood sugar. (R. 441.) In July 2009, Plaintiff's fasting blood sugar tested at 122, and the doctor noted that she had prediabetes.[3] (R. 438.)

Plaintiff has also received treatment for arthritis. In January 2010, she had experienced wrist pain, but recounted "significant improvement" while being treated with methotrexate. (R. 470.) Still, she experienced stiffness for about ten minutes in the morning. (*Id.*) She also reported feeling weak, with daytime sleepiness, while taking methotrexate. (*Id.*) In May 2010, she described pain in numerous joints, and stiffness in the morning in the first hour after she wakes up. (R. 433.) She also recounted that she experienced some swelling, and shortness of breath after walking six to seven blocks in the morning or two to three blocks later in the day. (*Id.*) Notes from July 2011 characterize her arthritis as "well-controlled." Her pain had improved and she had no complaints, although mild tenderness in her joints persisted. (R. 484.) In October 2011, she had run out of medications and was again experiencing "mild" rheumatoid anthric symptoms. (R. 458.)

In a written function report dated June 8, 2012, Plaintiff attested to extreme fatigue; pain and numbness in the upper extremities and upper back; shortness of breath on exertion; left eye blindness; a right eye that gets stuck shut and requires frequent flushing; itching attacks; pain in the knees, hips, ankles and lower back after sitting for a while; and frequent headaches and dizziness. (R. 260–61.) She

---

[3]     A fasting blood sugar level of 126 milligrams per deciliter or higher on two separate tests leads to a diagnosis of diabetes. http://www.mayoclinic.org/diseases-conditions/diabetes/basics/tests-diagnosis/con-20033091 (last visited March 8, 2017.) A fasting blood sugar level of 100 to 125 is considered prediabetes. *Id.* Plaintiff's earlier glucose testing in 2004 and 2005 demonstrated glucose levels of 101 and 104, respectively. (R. 377, 389.) All of her glucose test results of record are therefore in the prediabetes range.

wrote that she had extreme fatigue and fell asleep during the day. (R. 260, 262.) She indicated that her impairments caused her some trouble dressing, bathing, and doing her hair. (R. 262.) She estimated that she could lift ten pounds and could walk one to two blocks before needing to rest due to pain in her legs. (R. 266–67.) She reported stiffness after sitting for about 15 minutes and shortness of breath when climbing stairs. (R. 267.)

On August 2, 2012, reviewing physician Calixto Aquino, M.D. reviewed Plaintiff's file, including medical records from several sources, and determined that there was insufficient evidence in the file to support a claim of disability. (R. 123–25.) Dr. Aquino noted that an exam had been arranged with a consulting internist in order to assess any limitations in Plaintiff's motor abilities due to her rheumatoid arthritis, but that Plaintiff had refused to attend the exam. (R. 123–24.) A second state agency medical consultant, Dr. James Madison, later reviewed Plaintiff's file and concurred with Dr. Aquino's assessment. (R. 131–34.)

On her first hearing date on December 12, 2013, Plaintiff explained that she had not undergone a scheduled consultative exam because she believed that the evidence in her file was already sufficient to establish disability. (R. 82–85.) The ALJ indicated that he needed more evidence to make a determination and agreed to order X-rays of her right shoulder and elbow and to reschedule her consultative exam. (R. 104–106.) He warned her that a failure to undergo the exam would limit the arguments available to her and would affect his decision. (R. 83–85, 98–99, 106.)

The ALJ then explained to Plaintiff her right to counsel and postponed the hearing in order to give her time to seek representation. (R. 108–10.)

At her second hearing date on March 23, 2014, Plaintiff again appeared without counsel, waiving her right to representation. (R. 40, 45, 216.) She had not undergone a consultative examination. She testified that, when walking, she frequently had to stop due to shortness of breath, and she also had pain in her legs and hips. (R. 50–51, 63.) She observed, "everybody walks faster than I do." (*Id*.) She stated that she had recently gone to the arthritis clinic with pain and swelling in her hands, and that the arthritis also caused pain in her elbows and shoulders. (R. 52, 55–56.) She had trouble lifting her arms to do her hair. (R. 65.) Sometimes, her neck was stiff as well, and she had sciatic pain going from her back to her leg. (R. 57.) She was taking Methotrexate for arthritis and Diovan for hypertension. (R. 53–54.) She sometimes felt dizzy but did not know why. (R. 54.) She frequently fell asleep during the day, and would get thrown out of places for falling asleep. (R. 64–65.) She also stated that her shortness of breath was a result of congestive heart failure. (R. 66.)

A vocational expert ("VE") also testified. She described Plaintiff's past work as a secretary as light work. (R. 68.) The ALJ then asked whether Plaintiff's past job could be performed by a person who could work at a light exertional level but who lacked peripheral acuity on the left side; could not climb ladders, ropes, or scaffolds; could frequently but not constantly stoop; could only occasionally crouch, kneel, or reach overhead; could never crawl; must avoid concentrated exposure to

the cold and concentrated exposure to moving machinery; must avoid all exposure to unprotected heights; and could not do commercial driving. (*Id.*)

The ALJ replied that such a person could do Plaintiff's past job. (R. 68) The ALJ inquired whether there were jobs for a person with similar non-exertional restrictions if that person could only work at a sedentary level of exertion. (R. 68–69.) The ALJ testified that such a person could perform work as an address clerk or document preparer. (R. 69.) Either job would require the worker to remain on-task for 85% of the work day, less breaks and lunch, and to be absent no more than 10 to 14 days per year. (*Id.*)

### E.    The ALJ's Decision

The ALJ issued a written decision on May 29, 2014, following the five-step analytical process required by 20 C.F.R. § 416.920. (R. 17–35.) As a preliminary matter, the ALJ found that Plaintiff met the insured status requirements for DIB eligibility through June 30, 2003. (R. 19.) Thus, the relevant period of inquiry for her DIB claim starts on her alleged onset date of May 7, 1999 and runs through June 2003. (R. 19.) For her SSI claim, the relevant period starts on her application date of May 2, 2012 and ends on the date of the ALJ's decision. (R. 19, 21.) Thus, this appeal is focused on the narrow question of whether the ALJ adequately explained and supported his findings that Plaintiff was not disabled during those periods in 1999–2003 and 2012–2014.

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since her alleged onset date of May 7, 1999. (*Id.*) At step two, the

ALJ concluded that Plaintiff had the severe impairments of left eye blindness; intermittent swelling in the left hand; arthritis in both wrists; occasional dizziness; hypertension; and obesity. (R. 21.) However, he determined that Plaintiff's rheumatoid arthritis, obstructive sleep apnea, diabetes mellitus, glaucoma, shortness of breath, and pain the hips, knees, ankles, arms, and shoulders were not severe impairments, because the file lacked evidence showing that they imposed more than minimal limitations on Plaintiff's functioning. (R. 21–22.) At step three, the ALJ concluded that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of any impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (the "Listings"). (R. 22–25.) The ALJ next found that Plaintiff retained the Residual Functional Capacity ("RFC") to perform light work, except that she can never climb ladders, ropes, or scaffolds; can never crawl; can frequently stoop; can occasionally crouch and kneel and reach overhead; must avoid concentrated exposure to extreme cold and all exposure to unprotected heights; cannot use moving machinery or perform commercial driving; and cannot perform work involving peripheral acuity on the left side. (R. 25–33.)

At step four, the ALJ concluded that, even with those limitations, Plaintiff was able to perform her past relevant work as a secretary. (R. 33.) However, as an alternate finding, the ALJ proceeded to step five to determine whether there were other jobs available for a person of claimant's age, education, work experience, and residual functional capacity even if she were reduced to a sedentary level of exertion. (R. 33.) He determined there were still jobs available in the national

economy that she could perform, including the jobs of document preparer and address clerk. (R. 33–34.) Based on those findings, the ALJ concluded that Plaintiff was not disabled as defined by the Act. (R. 34.)

## DISCUSSION

### I.      Standard of Review

Section 405(g) provides in relevant part that "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Judicial review of the ALJ's decision is limited to determining whether the ALJ's findings are supported by substantial evidence or based upon legal error. *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000); *Stevenson v. Chater*, 105 F.3d 1151, 1153 (7th Cir. 1997). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007). This Court may not substitute its judgment for that of the Commissioner by reevaluating facts, reweighing evidence, resolving conflicts in evidence, or deciding questions of credibility. *Skinner*, 478 F.3d at 841; *see also Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008) (holding that the ALJ's decision must be affirmed even if "reasonable minds could differ" as long as "the decision is adequately supported") (citation omitted).

The ALJ is not required to address "every piece of evidence or testimony in the record, [but] the ALJ's analysis must provide some glimpse into the reasoning behind her decision to deny benefits." *Zurawski v. Halter*, 245 F.3d 881, 889 (7th

Cir. 2001). In cases where the ALJ denies benefits, "he must build an accurate and logical bridge from the evidence to his conclusion." *Clifford*, 227 F.3d at 872. The ALJ must at least minimally articulate the "analysis of the evidence with enough detail and clarity to permit meaningful appellate review." *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005); *Murphy v. Astrue*, 496 F.3d 630, 634 (7th Cir. 2007). "An ALJ has a duty to fully develop the record before drawing any conclusions . . . and must adequately articulate his analysis so that we can follow his reasoning." *See Boiles v. Barnhart*, 395 F.3d 421, 425 (7th Cir. 2005).

## II.     The ALJ Adequately Developed the Record

Plaintiff asserts that, before making a decision in her case, the ALJ should have better developed the record by locating additional medical records, engaging a medical expert to testify at the hearing, and questioning her more thoroughly about her impairments. The ALJ in a social security hearing has a duty to develop a full and fair record, a duty that is enhanced when, as here, the claimant is unrepresented by counsel. *Nelms v. Astrue,* 553 F.3d 1093, 1098 (7th Cir. 2009); *Nelson v. Apfel,* 131 F.3d 1228, 1235 (7th Cir. 1997). As part of his obligation to "scrupulously and conscientiously probe into, inquire of, and explore for all relevant facts," an ALJ may need to ask detailed questions, order additional examinations, and contact treating medical sources for further information and records. *Nelms,* 553 F.3d at 1098. However, courts generally defer to the "reasoned judgment of the Commissioner" as to how much evidence to gather. *Id.* To successfully challenge the sufficiency of the record, a claimant must show that there has been an omission

from the record which is "significant," meaning that the omission was prejudicial to the claimant. *Nelson v. Apfel*, 131 F.3d at 1235. *Binion v. Shalala,* 13 F.3d 243, 245 (7th Cir. 1994). "Mere conjecture or speculation that additional evidence might have been obtained…is insufficient." *Id.* at 246.

Plaintiff argues that the ALJ should have obtained medical records from her earlier application for benefits, which was dismissed after Plaintiff refused to appear at a hearing in 2007. *See Davenport v. Astrue,* 417 Fed. Appx. 544 (7th Cir. 2011) (affirming the ALJ's dismissal). She states that unspecified records from the earlier proceeding would demonstrate that she meets Listing 4.02, chronic heart failure. The ALJ provided ample evidence to support his finding that Plaintiff does not meet the requirements for that listed impairment. Other than Plaintiff's own subjective reports, there are no medical records that support a diagnosis of heart failure, much less heart failure of the severity required to meet the Listing. In addition, a doctor who treated her in for chest pain 2004 expressed doubt about her congestive heart failure diagnosis, given her admission she had undergone neither an echocardiogram nor a stress test. (R. 349.)

Plaintiff relies on *Briscoe ex rel. Taylor v. Barnhart,* 425 F.3d 345 (7th Cir. 2005) for the proposition that the ALJ's failure to obtain the earlier records was reversible error. However, in *Briscoe,* the claimant was found to be disabled as of the date of his hearing, and the omitted records were deemed crucial to determining the onset date of the claimant's existing disability. *Id.* at 350–351. That is not the case here. The ALJ provided substantial evidence for his finding regarding Listing

4.02. Plaintiff, in turn, has not articulated what medical findings from her prior filing might establish a diagnosis of congestive heart failure and establish its severity. She has not undergone an echocardiogram, which is a diagnostic tool key to establishing congestive heart failure at listings level. (R. 349.) She has therefore failed to demonstrate that the absence of records from her earlier application resulted in any significant omission prejudicial to her current claim. *See Binion v. Shalala,* 13 F.3d at 245–246.

Plaintiff also faults the ALJ's for failing to engage a medical expert to testify as to whether Plaintiff's impairments were medically equivalent to a listed impairment. *See* 20 C.F.R. 404.1526(a). An updated opinion from testifying medical expert is only required in two limited circumstances, when: (1) in the opinion of the ALJ or the Appeals Council, the "signs, symptoms and laboratory findings" in the record suggest that a Plaintiff's impairments may be medically equivalent to a listed impairment; and (2) new evidence is introduced that contradicts an earlier reviewing consultant's finding that that the claimant's impairments are not medical equivalent to a listed impairment. S.S.R. 96-6p. Neither of those circumstances applicable here. Two reviewing physicians concluded that there was not enough information in the record to establish a listings-level impairment. Plaintiff has not submitted additional medical evidence that would have been likely to change the reviewing physician's opinion. In the absence of new medical evidence suggesting equivalence to a Listing, a medical expert's testimony was not required.

Moreover, the ALJ's attempts to gather more information in the manner prescribed by regulations were thwarted by Plaintiff's refusal to undergo a consultative exam. While an ALJ makes the ultimate legal determination of whether a Listing is met or equaled, Social Security Administration policy must receive into the record and give weight to the opinion of a state agency physician or other program physician on this issue. SSR 96-6p. When there is inconsistent evidence in the file or when the evidence is insufficient to allow a determination, the ALJ may pursue a consultative examination. 20 C.F.R. §404.1519a. Here, the state agency medical consultants both found that there was not enough information in the file to determine whether or not Plaintiff was disabled. Accordingly, the ALJ attempted to gather more medical evidence by ordering a consultative exam. Though the exam was scheduled numerous times, Plaintiff did not attend. (R. 30, 82–90.) Thus, any lack of updated information in the file is primarily attributable to the actions of Plaintiff, not to any omission by the ALJ.

Plaintiff also asserts that, at the hearing, the ALJ should have more thoroughly questioned her about her shortness of breath, congestive heart failure, diabetes, and other matters. It is true that, despite Plaintiff's mention of her shortness of breath and diabetes, most of the ALJ's questioning focused on her arthritis, glaucoma, sleep disorder, and hypertension treatment. (R. 50–64.) The ALJ did solicit further information about Plaintiff's symptoms by asking the open-ended question, "Anything else you want to tell me?" (R. 65.) Plaintiff replied with information relating to the use of her arms. (*Id*.) She does not explain what

additional information the ALJ would have garnered through more thorough questioning, and thus has not shown that a significant omission has occurred. In addition, prior to the hearing, Plaintiff submitted a summary of her argument and her own descriptions of her medical history, symptoms, and treatment. (R. 497–511.) In his written opinion, the ALJ addressed Plaintiff's arguments and written testimony, including her assertion that her impairments meet or equal the Listings for chronic heart failure and inflammatory arthritis, and her assertion that she has a severe impairment of diabetes. (R. 22–25, 27.) He accurately characterized Plaintiff's testimony and argument about those disorders. (Id.) At step three, the ALJ therefore met his duties to "fully develop the record before drawing any conclusions" and to "adequately articulate his analysis so that we can follow his reasoning." *See Boiles v. Barnhart*, 395 F.3d 421, 425 (7th Cir. 2005).

Plaintiff also contends that the ALJ should have questioned her more fully about various factors including her medication side effects. *See* S.S.R. 16-3p (replacing S.S.R. 96-7p.) But she admits that most of her side effects came from medications that she has since discontinued using. [Dkt. 37 at ¶ 7.] She reports relatively minor side effects of "sores in mouth" and "ear infections" from Methotrexate. [ Dkt. 37 at ¶ 8, referencing R. 292.] In sum, she points to no substantial information beyond that already considered by the ALJ that would have been elicited by additional questioning. The ALJ drew as complete a picture of Plaintiff's conditions as he could in the absence of the consultative exam, and the omissions alleged by Plaintiff were not so significant and prejudicial as to compel

reversal. *See Flener ex rel Flener v. Barnhart,* 341 F.3d 442, 449 (7th Cir. 2004) (holding that, where the ALJ had a "fairly complete picture" of claimant's condition, the failure to obtain additional test results was not a significant prejudicial omission.) The Court therefore defers to the ALJ's "reasoned judgment" as to how much evidence to gather. *Nelms,* 553 F.3d at 1098.

## III.    The ALJ Supported His Step Three Findings With Substantial Evidence

At step three, the ALJ found that Plaintiff did not have an impairment or impairments that, when considered together, met or equaled the severity of any Listing. Plaintiff disputes that finding, contending that she has congestive heart failure and rheumatoid arthritis, both at listings-level severity. In order to challenge an ALJ's step-three findings, "a claimant first has the burden to present medical findings that match or equal in severity all the criteria specified by a listing." *Knox v. Astrue*, 327 F. App'x 652, 655 (7th Cir. 2009). To show that an impairment is "equivalent" to a listed impairment, the claimant "must present medical findings equal in severity to *all* the criteria for the one most similar listed impairment." *Sullivan v. Zebley*, 493 U.S. 521, 531, 110 S. Ct. 885, 891, 107 L. Ed. 2d 967 (1990) (emphasis added). The showing cannot be based solely on functional limitations. "A claimant cannot qualify for benefits under the 'equivalence' step by showing that the overall functional impact of his unlisted impairment or combination of impairments is as severe as that of a listed impairment." *Id.*

As the ALJ notes, Plaintiff has not supplied evidence to support a diagnosis of congestive heart failure, much less congestive heart failure of listings-level severity. (R. 24.) When reference to the disease does appear in her medical records, it is only as reported by Plaintiff in recounting her medical history to new medical care providers. (R. 349, 517.) One such provider, an emergency room physician, clearly documented his doubt as to the accuracy of Plaintiff's self-report, given her admission that she had not undergone the necessary testing to establish the diagnosis. (R. 349.) Plaintiff has not provided evidence that she meets the "A" criteria of the Listing, which must be met before the "B" criteria are considered. The "A" criteria of Listing 4.02 requires the "medically documented presences" of either systolic or diastolic failure with specified markers, "while on a regimen of prescribed treatment." Listings § 4.02. Her stress test finding of "subnormal exercise tolerance" is not relevant to the "A" criteria. Plaintiff shows neither systolic nor diastolic failure, nor has she been on a "regimen of prescribed treatment" for the disorder. Therefore, any heart impairment may have does not meet the "A" criteria and therefore falls short of meeting the Listing.

Plaintiff argues in the alternative that her symptoms are "equivalent" to the listing for chronic heart failure, despite the state agency doctors' opinions to the contrary. An "ALJ may properly rely upon the opinion of [state agency] medical experts" in determining medical equivalence. *Scheck v. Barnhart,* 357 F.3d 697, 700 (7th Cir. 2004). The ALJ properly relied on two state agency doctors to find that Plaintiff's impairments were not equivalent to any Listing, Plaintiff points to

neither a contrary medical opinion nor any diagnostic testing that the ALJ overlooked. Instead, she relies instead on her own lay interpretation of her symptoms to argue equivalence. [Dkt. 47 at 5 (citing R. 336–37, "Request for Appeals Council Review.")] The ALJ did not err in finding that Plaintiff's impairments do not meet or equal the listing for chronic heart failure.

Plaintiff also asserts that she meets the listings criteria for inflammatory arthritis, which are described in general at Section 14.00 and listed in four specific subcategories at Section 14.09. Listing 14.00, 14.09. Plaintiff finds error in the ALJ's consideration of Listing 1.02, Major Dysfunction of a Joint, instead of the correct listings for inflammatory arthritis. [Pl. Br. at 15, 17, 20] *See* 14.00.D.6, 14.09.D. She also faults the ALJ for pointing to the lack of blood marker evidence to determine that her rheumatoid arthritis does not meet a the listing.

First, the ALJ did explicitly consider Listing 14.09, Inflammatory Arthritis, in addition to numerous other listings. (R. 30.) That said, the ALJ's explanation regarding Plaintiff's rheumatoid arthritis at step three of his analysis is quite brief: he states that Plaintiff does not meet the criteria, lists the criteria, and then points to her lack of blood level markers. As Plaintiff points out, blood marker evidence alone is not sufficient to determine whether her arthritis meets the Listing. However, this error is not fatal where, as here, the ALJ addressed other evidence regarding the severity of Plaintiff's arthritis earlier in his opinion and relied on state agency doctors to determine no Listing was met, and Plaintiff has not provided medical evidence that shows she meets the Listing. (R. 21–22.)

The 14.09.B listing is met when inflammation or deformity in one or more major peripheral joints is accompanied by involvement of two or more organs or body systems, with one involved to at least a moderate level of severity, *and* at least two of the constitutional symptoms or signs (severe fatigue, malaise, or involuntary weight loss.) The subsection 14.09.D. listing, in turn, is established by "Repeated manifestations of inflammatory arthritis, with at least two of the constitutional symptoms or signs," which a marked limitation in one of three general areas: activities of daily living; maintaining social functioning; or completing tasks in a timely manner due to deficiencies in concentration, persistence, or pace.

In order to support her argument that her rheumatoid arthritis satisfies all of the criteria, Plaintiff cites her own earlier correspondence with the Administration. [Dkt. 47, citing R. 336–37, "Unfair Hearing Complaint."] However, as the ALJ explained at Plaintiff's hearing, the regulations do not permit him to find a listings-level impairment based solely on Plaintiff's own reports. (R. 82–87.) Instead, he properly relied on the opinions of the state reviewing physicians who reviewed Plaintiff's records to determine that her symptoms listings-level severity. In addition, as the ALJ discussed at step two of his opinion, the doctors who monitored Claimant's rheumatoid arthritis characterized it as "well-controlled." She had "mild" symptoms when she was not taking her medication. She indicated that her morning stiffness subsided in about an hour. (R. 433.) In her hearing, she acknowledged that the pain associated with her arthritis was intermittent. (R. 51.) The involvement of her eye, in the form of right eye blepharitis, was controlled with

medication. In sum, Plaintiff has not met her burden of showing that her arthritis meets or equals any subcategory of the listing for inflammatory arthritis.

## IV. The ALJ Did Not Err By Omitting Congestive Heart Failure and Rheumatoid Arthritis From His List of Severe Impairments at Step Two

Plaintiff argues that the ALJ erred at step two by omitting congestive heart failure and rheumatoid arthritis from his list of her severe impairments. The step two determination that a claimant has a "severe impairment," defined as any impairment that causes "more than a minimal effect on an individual's ability to do basic work activities," allows an ALJ to proceed to the next step of the five-step sequential process. *Curvin v. Colvin,* 778 F.3d 645, 649 (7th Cir. 2015). In this case, the ALJ found that Plaintiff did have the severe impairments of left eye blindness; intermittent swelling in the left hand; arthritis in both wrists; occasional dizziness; hypertension; and obesity. (R. 21.)

The Court did not err in omitting additional impairments from the list at step two. As noted above, the ALJ properly found that congestive heart failure was not among Plaintiff's medically-determinable impairments because no record evidence establishes the diagnosis. (R. 24.) *See* SSR 96-04 ("An 'impairment' must result from…abnormalities that can be shown by medically acceptable clinical and laboratory diagnostic techniques.") Regulations do not permit an ALJ to establish the existence of an impairment based on symptoms alone. (*Id.*)

The ALJ did determine that Plaintiff has rheumatoid arthritis, but then provided substantial evidence to support his finding that the impairment does not

impose more than a minimal effect on Plaintiff's abilities. (R. 21–22.) In addition to mentioning the lack of blood markers, the ALJ noted that doctors characterized Plaintiff's arthritis as "mildly active" and that her morning joint stiffness was "intermittent" and short-lasting. (*Id*.) Later, in assessing Plaintiff's RFC, the ALJ fully considered the limitations caused by Plaintiff's rheumatoid arthritis when he found limits in her capacity for postural movements and overhead reaching. (R. 25.) The ALJ did not err in omitting Plaintiff's rheumatoid arthritis from his list of severe impairments at step two.

## V. The ALJ's Evaluation of Plaintiff's Subjective Symptom Severity is Not Patently Wrong

Plaintiff argues that the ALJ performed a flawed analysis of her credibility by relying heavily on her failure to appear at a scheduled consultative exam. The Social Security Administration (the "Administration") recently clarified its sub-regulatory policies about symptom evaluation, eliminating the term "credibility" to emphasize that "subjective symptom evaluation is not an examination of the individual's character." *See* SSR 16-3p, 2016 WL 1119029 at *1 (effective March 28, 2016). The underlying statute, regulations and applicable Seventh Circuit law about assessing claimants' statements remain unchanged. 20 C.F.R. § 404.1529; *see also Cole v. Colvin,* 831 F.3d 411, 412 (7th Cir. 2016.)

According to Social Security regulations, an ALJ must determine the severity and persistence of a claimant's symptoms through a two-step process. S.S.R. 16-3p. First, he must determine that the claimant has a medically-determinable

impairment ("MDI") that can be expected to cause the claimant's claimed symptoms. An ALJ may not find a medically-determinable impairment based on the claimant's oral or written testimony. Instead, "medical signs and laboratory findings, established by medically acceptable clinical or laboratory diagnostic techniques," must establish the diagnosis. 20 C.F.R. § 404.1529(b). Only then can the ALJ move on to the second step, in which he must evaluate "the intensity and persistence" of the individual's reported symptoms pursuant to objective medical evidence and other evidence. 20 C.F.R. §404.1529(c), S.S.R. 16-3p. Among the factors to be considered are "the claimant's daily activities, her level of pain or symptoms, aggravating factors, medication, treatment, and limitations." *Villano v. Astrue*, 556 F.3d 558, 562 (7th Cir. 2009) (citations omitted); *see* 20 C.F.R. § 404.1529(c), S.S.R. 16-3p. An ALJ must explain his credibility determination "by discussing specific reasons supported by the record." *Pepper v. Colvin,* 712 F.3d 351, 367 (7th Cir. 2013). The ALJ's determination may be overturned only if it is unsupported by substantial evidence or is "patently wrong." *McKinzey v. Astrue,* 641 F.3d 884, 890 (7th Cir. 2011), *Craft v. Astrue*, 539 F.3d 668, 678 (7th Cir. 2008).

The ALJ found that Plaintiff's statements about the intensity, persistence, and limiting effects of her symptoms were not entirely credible. (R. 30.) Contrary to Plaintiff's assertion, the ALJ provided numerous reasons for this finding and did not base it solely on her refusal to cooperate with a consultative exam. The ALJ described Plaintiff's testimony in detail and found it both in internally inconsistent and in large part unsupported by the medical evidence. (R. 26–27, 30–31.) For

example, while Plaintiff testified that she has disabling diabetes, the file shows no clear diabetes diagnosis, and she acknowledged that her A1C levels are normal.[4] (R. 30.) Similarly, when Plaintiff told an emergency room physician that she had congestive heart failure, the physician noted that she had not undergone the necessary tests to establish that diagnosis. (R. 31.) The ALJ also properly rejected her argument that, because she had allegedly received substandard care, her own lay diagnoses and subjective reports were more reliable than the notes of the doctors who treated her. (R. 30–31.) *See* 20 C.F.R. 404.1529(a) ("statements about your pain or other symptoms will not alone establish that you are disabled.")

As for Plaintiff's rheumatoid arthritis, the ALJ urged Plaintiff to attend a consultative exam in order to determine what impact, if any, her disorder had on her ranges of motion. Absent such an exam, the ALJ based his judgment about the severity of her arthritis on the available medical evidence and in part on Plaintiff's own reports, including her report to her doctor that the stiffness in her joints in the morning subsided after about an hour, and her testimony that the pain was "intermittent." (R. 51, 433.) The ALJ also noted that had left the hospital against advice, was non-compliant with medications, and on several occasions had refused additional therapies, suggesting that her symptoms were not as limiting as she alleged. (R. 31.)

---

[4]    The A1C test provides information about a person's average level of blood glucose over the past three months. It can be used to diagnose and manage Type 2 diabetes and prediabetes. National Institute of Diabetes and Digestive and Kidney Disease, "The A1C Test & Diabetes," *available at* https://www.niddk.nih.gov/health-information/diabetes/overview/tests-diagnosis/a1c-test (last visited March 17, 2017.)

## VI. Remaining Arguments

Plaintiff makes several objections to the ALJ's step four and five findings regarding her ability to work. In these arguments, she re-asserts her self-diagnosis of congestive heart failure and restates her claimed restrictions of difficulty walking and shortness of breath. The ALJ accounted for these claimed restrictions by providing an alternate step five finding assuming a restriction to sedentary labor. (R. 33.) Plaintiff also raises an argument that the ALJ overlooked evidence that she had trouble using her hands and arms, but she supports this argument only with references to her own written and oral testimony and no medical evidence. [Dkt. 35 at 18 (citing dkt. 37 at ¶¶ 74, 75 (citing Plaintiff's written and oral testimony))]. The ALJ accounted for Plaintiff's documented shoulder problems by limiting her to occasional, not frequent or constant, overhead reaching bilaterally. (R. 25.) Further, the ALJ noted Plaintiff's testimony that, despite some reported difficulties using her hands, she was able to use kitchen tools and utensils, open jars and food packages, turn pages, and sort papers or hold a pen, though these last two activities did require occasional breaks to stretch her hands. (R. 27.) The ALJ therefore supported with substantial evidence his decision to omit any hand limitation from Plaintiff's RFC.

Plaintiff also maintains that the ALJ erred in determining her date last insured ("DLI"). Because she raises this argument only in her reply brief, in response to a clarifying footnote in the Commissioner's Brief, the argument is deemed waived. However, it does not appear that Plaintiff would have had success

on the merits even if she had advanced the argument in her opening brief. She bases her argument solely on an incorrect notation, in some portions of the administrative record, of a DLI of June 30, 2006. To be eligible for benefits, a claimant must establish that her disability arose on or before her DLI. 42 U.S.C. § 423(a)(1)(A) and (c)(1); *Allord v. Astrue*, 631 F.3d 411, 416 (7th Cir. 2011). A claimant, like Plaintiff, who is over the age of 31 and does not have any prior period of disability, must have "not less than 20 quarters of coverage during the 40–quarter period" preceding the disability onset date; essentially, she must have worked for at least five of the prior ten years. 42 U.S.C. § 423(c)(1)(B). Plaintiff concedes that she last worked in May 1999, a fact confirmed by earnings records in her Social Security file. (R. 238–246). The ALJ relied on Plaintiff's work dates to determine that she was insured only through June 30, 2003. (R. 17).

## CONCLUSION

Plaintiff's motion is DENIED and the decision of the Commissioner is AFFIRMED.

Date: 5/15/2017

_____

U.S. Magistrate Judge, Susan E. Cox